### BENNETT *v.* HILL.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE—INFERENCES.
    Plaintiff's testimony and all legitimate inferences which may be drawn therefrom must be viewed in a light most favorable to plaintiff in determining whether a trial court was in error in not granting a directed verdict.

2. AUTOMOBILES — PEDESTRIANS — CONTRIBUTORY NEGLIGENCE — EVIDENCE.
    Question of plaintiff eastbound pedestrian's contributory negligence as he was crossing southerly crosswalk of intersection on a December evening when hit by defendants' southbound taxicab *held*, for jury, where testimony was in sharp conflict as to whom the traffic light accorded the right-of-way and there was a peculiar configuration of intersection requiring a southbound car to jog somewhat to its right to stay on its proper side of the street.

3. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
    Each case involving the contributory negligence of a plaintiff in an automobile accident case must stand on its own facts.

4. SAME—VERDICT—GREAT WEIGHT OF THE EVIDENCE.
    Verdict for plaintiff pedestrian against defendant taxicab owner and operator may not be said to be contrary to the great weight of evidence, where there is substantial evidence to support the verdict.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 886.
[2] 5 Am Jur, Automobiles §§ 703, 705.
[4] 3 Am Jur, Appeal and Error §§ 887, 888.
[5–7] 53 Am Jur, Trial §§ 1065, 1070, 1071.
[8] See, generally, 58 Am Jur, Witnesses § 465.
[9] 3 Am Jur, Appeal and Error § 1097.
[10] 15 Am Jur, Damages § 329.
[11] 15 Am Jur, Damages § 72.
[12] 3 Am Jur, Appeal and Error §§ 893, 907.
[13] 15 Am Jur, Damages §§ 218–220.
    Excessiveness of damages in action by person injured for personal injuries not resulting in death.  46 ALR 1230; 102 ALR 1125; 16 ALR2d 3.

5. TRIAL—SPECIAL QUESTIONS.

It is not error for a trial court to refuse to put special questions to the jury, where the questions proposed do not call for findings of fact which are conclusive of the real or controlling issue involved in the case (CL 1948, § 618.39).

6. SAME—SPECIAL QUESTIONS.

Special questions must call for findings of fact which are conclusive of the real or controlling issue in the case and be nonargumentative in nature (CL 1948, § 618.39).

7. AUTOMOBILES—PEDESTRIANS—SPECIAL QUESTIONS.

Trial court properly declined to give special questions in action arising out of plaintiff eastbound pedestrian's injuries when hit by defendants' southbound taxicab at an intersection, where the questions sought to ascertain whether or not the point of impact was "where the debris was found" and whether or not the collision occurred south of the southerly crosswalk and west of the center line of the street on which the taxicab was proceeding, and the answers to such questions in the particular case merely called for conclusions on evidentiary matters as distinguished from findings on a controlling issue or the ultimate fact (CL 1948, § 618.39).

8. PLEADING — CROSS-EXAMINATION — ALLEGATIONS — ADMISSIONS — PRIVILEGED COMMUNICATIONS.

Ruling of trial court that defendants' counsel could not cross-examine plaintiff about allegations made in declaration as to his earning capacity but permitting full comment upon the contents of pleadings as admissions against interest did not constitute reversible error in action at law for injuries sustained, the declaration having been prepared and signed by plaintiff's attorney and communications between plaintiff and his attorney being privileged (Court Rule No 17, § 10 [1945]).

9. APPEAL AND ERROR—TRIAL—INSTRUCTIONS—ARGUMENTATIVENESS —PREJUDICE.

Lengthy charge to jury in pedestrian's action against owner and operator of taxicab for injuries sustained at street intersection *held,* not to have been prejudicial nor so argumentative as to be reversible, when considered as a whole.

10. DAMAGES—EXCESSIVENESS—BURDEN OF PROOF.

Party who claims verdict was excessive has the burden of making an affirmative showing that it was out of reasonable proportion to the damages shown by the proofs.

11. Same—Pain and Suffering.
    The amount allowed for pain and suffering rests in the sound judgment of the trier of the facts.

12. Same—Supreme Court—Pain and Suffering—Prejudice—Sympathy.
    The Supreme Court will not substitute its judgment on the question of damages for pain and suffering, where the verdict does not appear to have been secured by improper methods, prejudice or sympathy and is not so great as to shock the judicial conscience.

13. Same—Leg Injury—Loss of Earnings—Permanent Injuries.
    Verdict of $20,000 to plaintiff salesman *held,* not excessive, where evidence shows his income prior to the injury by defendants' taxicab was $350 a month, that he was hospitalized for approximately 10 months, and partially incapacitated for about 7 months more, leg was broken, there is a permanent limitation of knee flexion, atrophy of right thigh and possibility of limitation of ankle flexion and a degree of discomfort will be endured in the future.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 6, 1955. (Docket No. 38, Calendar No. 46,175.) Decided June 29, 1955.

Case by Robert Bennett against Reginal Hill and David A. Cowan for damages for injuries sustained when struck by taxicab. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Lacey, Jones & Doelle (Ivin E. Kerr,* of counsel), for plaintiff.

*Edward N. Barnard,* for defendants.

Smith, J. In this case plaintiff, Robert Bennett, brought an action in the circuit court for the county of Wayne to recover for personal injuries sustained as the result of an accident. He was struck by a Checker taxicab, driven by defendant David A. Cowan, in the city of Detroit on December 26, 1949,

at about 8:45 p.m. Defendant Reginal Hill, the owner of the taxicab, was joined as a party defendant.

Plaintiff, on the day in question, after having arrived by train from Grand Rapids, waited for a taxicab at the Fort street railroad station. After waiting for 5 or 10 minutes and being unable to obtain the taxicab, he decided to walk to Woodward avenue to obtain either a taxicab or a bus. Carrying a suitcase weighing 20 to 25 pounds, he walked easterly on the southerly sidewalk of Fort street and, in crossing the intersection of Fort and Wayne streets, was struck by the taxicab. Plaintiff and defendant Cowan were the only eyewitnesses to the accident.

On the trial in circuit court, defendants, at the close of plaintiff's proofs, moved for a directed verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law. Said motion was denied without reservation, was renewed at the conclusion of the testimony, and was again denied by the court. The jury returned a verdict in plaintiff's favor in the sum of $20,000 and judgment was entered accordingly. Thereafter defendants filed a motion for a new trial, which was denied by the trial court, whereupon defendants appealed.

The proofs disclose that the intersection where the accident occurred, Wayne and Fort streets, is somewhat unusual in its layout. North of Fort, Wayne is 59 feet wide. South thereof the width is only 27.1 feet. The westerly lines of Wayne, both below and above Fort, are continuous, the diminution in width of the street being effected by a change in the easterly line of Wayne. The result is that a car going south on Wayne must make a "jog" to its right to stay on its own proper side of the street. The intersection is protected by traffic lights which, it is not disputed, were in operation on the December night in question.

The testimony of the plaintiff relative to his conduct in attempting to cross the street was that he stopped at the intersection, looked for traffic in all 4 directions, and observed the light to be green to cross Wayne. He thereupon started to cross. When he reached the middle of the street, approximately, he again looked to the north for traffic, again observed that the traffic light was still green for Fort street traffic, whereupon he continued across the street. He was struck, he testified, when some 6 or 7 feet from the curb he was approaching.

The taxicab driver, defendant Cowan, was confined in a hospital with pulmonary tuberculosis and did not testify in person. His deposition, however, was read into the record. It differed markedly, both in substance and in detail, from plaintiff's testimony. It was his version that he had completely crossed Fort street with the green light, and was in the crosswalk when plaintiff ran in front of him and was struck.

"When this man commenced to run across Wayne street, I was in the crosswalk. I would say he was either 3 or 4 feet south of the crosswalk when he started to run. I say the man started to run across the street."

Defendants contend that plaintiff was guilty of contributory negligence as a matter of law. We are not in accord with this view. Plaintiff's testimony and all legitimate inferences which may be drawn therefrom must be viewed in a light most favorable to plaintiff in determining whether a trial court was in error in not granting a directed verdict. *Douglas v. Holcomb,* 340 Mich 43; *Wisnaski v. Afman,* 341 Mich 453.

We will note some of the evidentiary conflicts presented. From the testimony of the plaintiff and the defendant driver it is clear that they do not agree

with regard to the traffic signal, plaintiff claiming that it was green in his favor at the time he started to cross the intersection and that it continued to be green at the time of his last observation, immediately before he was struck by defendant Hill's car some 6 to 10 feet from the curb. Defendant driver, on the other hand, insists that the light was in his favor. Defendants contend, also, that plaintiff, had he looked, must have seen the taxicab before it struck him. Plaintiff, in reply, points to the peculiar configuration of the intersection. A southbound car next to the center line of Wayne, north of Fort, is headed directly for its "wrong" side of Wayne south of Fort, but constitutes no danger to pedestrians crossing Wayne south of Fort, who have reached a position in the street where they are relatively safe from southbound traffic, unless the car fails to make the jog demanded by the street's narrowing. Defendants also point out certain claimed inconsistencies in the plaintiff's testimony with respect to his position in the intersection when struck by defendant Hill's taxicab. There were, in addition, other conflicts in the testimony, a recital of which would unduly lengthen this opinion.

Appellants have cited in support of their contentions numerous prior decisions of this Court in which recovery of damages was denied because of the failure to establish freedom from contributory negligence. They point to decisions of this Court where, as a matter of law, we have held that the pedestrian involved must have seen the car that was there to be seen. Thus *Moore* v. *Cook,* 275 Mich 578; and *Molda* v. *Clark,* 236 Mich 277, and other cases in which the accident occurred on the driver's proper side of the road. But obviously this is a doctrine which requires careful guarding in its application lest it furnish an automatic answer in any negligence case, for an automobile at a given place is never

cloaked with a veil of invisibility. Extended discussion of the decisions cited would serve no useful purpose here. It is to be borne in mind that the factual circumstances in the many automoblie accident cases that have come before the court differ in numerous respects. It is axiomatic that each such case must stand on its own facts. In such a situation as we have here outlined, a question of fact was clearly presented as to plaintiff's contributory negligence and it was properly submitted to the jury. A complete answer to defendants' argument is found in the recent decisions of this Court in *Douglas* v. *Holcomb, supra; Day* v. *Troyer,* 341 Mich 189; and *Wisnaski* v. *Afman, supra,*

It is also urged that the jury's verdict is contrary to the great weight of the evidence. In examining the record before us we find that there is substantial evidence to support the verdict. Under such facts we cannot say that the verdict of the jury was contrary to the great weight of the testimony. The rule applied in determining this question is clearly stated in *Werker* v. *McGrain,* 315 Mich 287, 291:

"If there is substantial evidence tending to support the verdict it should not be set aside even though this Court might be in doubt as to the ultimate facts."

See, also, *Day* v. *Troyer, supra.*

Error is likewise claimed because of the court's refusal to submit to the jury 2 special questions:

(1) Was the point of impact at the place where the debris was found?

(2) Did the collision occur south of the southerly crosswalk and west of the center line of Wayne street?

We have repeatedly held, as to special questions, that they must call for findings of fact which are conclusive of the real issue involved in the case,

*Gilbert* v. *Stickley,* 204 Mich 342, or be controlling on the main issue, *Corfeld* v. *Douglas Houghton Hotel Company,* 324 Mich 459, and cases cited, and nonargumentative in nature. See *Wernette* v. *Bradfield,* 233 Mich 23. The trial court rejected both questions on the ground that "they do not come within the statute,* which provides for an answer as to a question of fact,—as to a finding of fact. Those, all of them, call for conclusions."

Tested by the principles enunciated in the cases above cited, both questions are clearly objectionable. As to the first, there was a great deal of argument at the trial as to whether certain material in the street near the plaintiff's body was debris which might have fallen from a car upon impact or whether it was "just plain dirt," not unlikely to be encountered in any city street. It was repeatedly referred to at the trial in the alternative, as "debris or mud," or "some mud or some debris," or "mud or dirt." Defendants' phrasing of the question is argumentative and assumes as a conclusion a circumstance which was far from proven. But beyond that, it is abundantly clear that the answers to both questions merely call for conclusions on evidentiary matters, as distinguished from findings on a controlling issue, or, as sometimes put, an ultimate fact. The trial court was correct in its rejection of both.

Error is further claimed in the trial court's refusal to permit defendants' counsel to cross-examine plaintiff relative to allegations made in his declaration as to his earning capacity. Plaintiff's declaration, which was unsworn, claimed that he had an earning capacity of upward of $500 per month. The plaintiff testified that for 12 months prior to the accident his average monthly income was about $350;

---

* See CL 1948, § 618.39 (Stat Ann § 27.1019).—REPORTER.

that in 1951 his income averaged approximately $350 per month, and in 1952 averaged $362 per month.

The substance of the trial court's ruling with respect thereto was as follows:

*"The Court:* You cannot test the credibility of the witness by matters that are included in the pleadings, unless the pleading is traced directly to him. If you have a sworn bill of complaint signed by the witness and sworn to before a notary public,—you always have one in divorce cases, and you generally have bills of complaint sworn to on the chancery side of the court always. That is something you can trace directly to the man who signed it, and swears to it. But in this case, the pleading is one which is signed by his attorney. He didn't make that statement."

And further:

*"The Court:* You cannot cross-examine him on something unless you bring it home to him that he made the statement. You cannot attack the credibility of a witness on the basis of a statement that somebody else made, until first you prove that the statement was made with his express knowledge and authority, under such conditions that he is bound by it. Now, if it were against interest, or if it is against his interest, he is bound by it. And you can comment on it to your heart's content on that basis. But I do not think it is a subject of attacking his credibility unless you can prove first that it was made with his knowledge and consent; and in trying to do that you run up against the matter that communications between attorney and client are privileged."

Reversible error cannot be based on this ground. The court's ruling permitted full comment upon the contents of the pleadings as admissions against interest. The ruling and the reasons therefor, as stated by the trial court, were correct. Court Rule No 17, § 10 (1945).

Grounds for reversal are claimed by appellants in that the court's charge to the jury was argumentative. It is a fundamental rule that, in reviewing a charge, it will be considered as a whole in determining whether prejudicial error is involved. It would serve no useful purpose to quote at length from the court's charge which covers 17 pages of the printed record. The charge has been examined in its entirety and we find that it is not prejudical and does not constitute reversible error.

Defendants' final contention on appeal is that the jury's verdict is excessive. The medical testimony in the case establishes that plaintiff was hospitalized for a period of approximately 10 months for the treatment of his injuries. He had received, in addition to other injuries, what was described as an "overriding fracture of the mid-shaft of the right femur." Skeletel traction was employed, plus later surgery, bone graft, and the utilization of a steel metal plate secured to the bone by screws. After discharge from the hospital, plaintiff used a leg brace until April of 1951. The injury was painful and will in the future involve a degree of discomfort. Plaintiff, who is a salesman, is permanently hampered in driving his car, in walking, and in his recreation. There is a permanent limitation of knee flexion, with a degree of atrophy of the right thigh, and a possibility of limitation of ankle flexion. As to earnings, his losses could fairly be said to involve the sum of $350 a month from December, 1949, to November of 1950, with an additional $100 a month from the latter date to June of 1951.

This Court has but recently, in *Day* v. *Troyer, supra,* spoken on this same question. What was said there (pp 201, 202) is applicable here:

"In order to justify the granting of a new trial on the ground that the amount of the verdict is excessive, the burden is upon the party so claiming

to show affirmatively that the verdict rendered is excessive. In *Torma* v. *Montgomery Ward & Company,* 336 Mich 468, the appellant claimed that the amount of the jury's award was excessive and out of reasonable proportion to the damages shown by the proofs. We there said (p 488):

" 'There is nothing in the record before us to indicate that the jury may have been prejudiced or biased by any occurrence in the course of the trial. It has been repeatedly recognized in prior decisions of this Court that the awarding of damages for pain and suffering rests in the sound judgment of the jury, or of the judge in a case tried without a jury. What was said in *Teeter* v. *Pugsley,* 319 Mich 508, 511, may well be repeated here:

" ' "The amount allowed for pain and suffering must rest in the sound judgment of the trier of the facts. We do not substitute our judgment on this question unless a verdict has been secured by improper methods, prejudice, or sympathy. No such showing has been made; nor is this portion of the judgment so great as to shock the judicial conscience. *Watrous* v. *Conor,* 266 Mich 397, 401."

" 'See, also, *Brebner* v. *Sidney Hill Health System, Inc.,* 269 Mich 541; *Trafamczak* v. *Anys,* 320 Mich 653, 662; *Graham* v. *United Trucking Service, Inc.,* 327 Mich 694.' "

In view of the serious and permanent nature of the injuries, the lengthy hospitalization, the pain and suffering, and the major limitation of movement of the knee, together with financial losses involved, the verdict, while substantial, is not so excessive as to shock the judicial conscience. *Crase* v. *City of Detroit,* 341 Mich 132.

The judgment of the trial court is affirmed. Plaintiff may have costs.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred with SMITH, J.

DETHMERS, J., concurred in the result.